### JOSHUA C. SANDERS
### v.
### HENRY E. SEELYE ET AL.

*Attorneys—Lien on Papers—Fees—Contract—Construction of.*

1. An attorney is entitled to a lien for a general balance of account on papers which have come into his hands in the course of his professional employment.

2. In the case presented, it is *held:* That certain letters and the action of the parties, constituted a contract for services in the Appellate Court only; that the appellees are entitled to a lien on the bonds in question for their fees for services in the Supreme Court; and that the evidence is sufficient to sustain the allowance by the court below.

Sanders v. Seelye.

[Opinion filed September 19, 1888.]

Appeal from the Circuit Court of Cook County; the Hon. Murray F. Tuley, Judge, presiding.

In 1874, David A. Gage filed his bill in the Circuit Court of Cook County against the Riverside Improvement Company, Joshua O. Sanders, Henry E. Seelye and others, praying that a release of a trust deed to Henry Greenebaum might be set aside, the trust deed foreclosed and for other relief. Sanders being the holder of 195 bonds secured by a subsequent trust deed to John N. Jewett, filed a cross-bill in the case to secure the benefits which he thought himself entitled to, as the owner of these bonds. The decree of the Circuit Court was adverse to ·Sanders, as well as to numerous other parties to the suit. He prayed an appeal to the Supreme Court, and filed there a transcript of the record. The appeal was dismissed. Afterwards, in 1881, Seelye, who was an attorney, was endeavoring to induce certain of the defeated parties to sue out a writ of error from this court. A correspondence on the subject ensued between him and Sanders, the latter then and ever since being a resident of New York. Sanders, to forward the plan, consented that the transcript filed in the Supreme Court might be withdrawn for use on the proposed writ of error, but refused all overtures to become one of the plaintiffs in error. September 14, 1882, Seelye wrote to Sanders that the cause was nearly ready for the Appellate Court, and suggested that his position was a good one, and that he should have some one to protect his interests. Two days later Sanders replied, saying he had received Seelye's letter about his securing counsel to attend to his interests in the case in the Supreme Court, but in substance declined to do so. Seelye wrote again on the 18th, and Sanders replied on the 21st, in which he said he thought the decision could not be sustained in the Appellate Court. On the 23d, Seelye wrote, making a definite proposition to take charge of the litigation for Sanders on certain terms, and saying if his proposition was agreed to, he should employ Herbert, Quick & Miller,

as the attorneys in the case. Sanders replied September 25th, saying: "In reply I would say, that the terms on which you propose to have my interests represented and protected in Supreme Court on appeal, are not so favorable as I was led to anticipate, and I can not accede to them. * * * I will pay for the printing necessary in the case, and I will pay attorney's fees in addition to make the sum $500 if he is successful; if not successful $300. That is, the total shall not exceed $500 in case of success, and only $300 if not successful. The bill for printing, not to exceed $150, I will pay as soon as rendered. My proposal relates to a reversal in the Supreme Court. As to the other acts succeeding, differents terms can be fixed."

This letter was never shown to Herbert, Quick & Miller, nor its contents made known to them. Seelye wrote Sanders on the same day, that he had taken the liberty of employing Herbert to prepare an argument for him, and would himself compensate him, until he heard from Sanders. When Seelye received Sanders' letter of September 25th, he had an interview with Herbert, Quick & Miller, and that firm wrote Seelye a letter, dated September 28th, saying: "We have considered your proposal in behalf of Mr. Sanders, that we represent his interests in the Appellate Court." They then proceed to explain at some length the situation of the case, and decline Sanders' offer. On the same day Seelye wrote to Sanders inclosing the letter from Herbert, Quick & Miller, and saying to him, "I submitted your proposition to Messrs. Herbert, Quick & Miller, and have just received the inclosed. After reading please return to me, etc." September 30th, Sanders writes Seelye that he is not much encouraged to engage in this free fight—that it looked too much like taking a leap into the dark, and closed by saying, "I can not change my proposal, and if not accepted, I will wait and look on, abiding events." Before there was any further correspondence, Herbert entered Sanders' appearance in the case in the Appellate Court, of which Sanders was informed by Seelye. Various letters passed between Seelye and Sanders from October 17, 1882, until June 27, 1883, in all of which

the case was referred to as pending in the Appellate Court, and Sanders was informed of successive moves in that court and that on account of Herbert's death, Miller had taken charge of the case. During that period a misunderstanding arose between them as to Sanders' liability for costs and he referred to and insisted upon standing by his letter of September 25, 1882. Seelye's reply stated: "Referring to yours of September 25th, I note the error in my recollection of your agreement," etc. On June 27, 1883, the Appellate Court affirmed the decree of the Circuit Court, and the same day Seelye notified Sanders of the fact, and asked him what they should do; that the parties in Chicago wanted to take it up, but that it rested largely with him to decide, and the expense would not be large. June 30, 1883, Sanders replied: "If the expense is not going to be great, I should be in favor of going up to the Supreme Court. I would like to have some idea of what the expense will be. I do not wish to take another leap in the dark. * * * I am willing to sustain my fair proportion," etc. July 21st, Seelye sent Sanders an appeal bond for his signature and stated in his letter: "The costs of an appeal will not exceed $500, and may fall quite below that," etc. The appeal was taken to the Supreme Court. Sanders was informed of it and wrote several letters to Seelye inquiring about the decision of that court. Seelye and Quick & Miller had charge of the case in the Supreme Court, and Sanders was informed thereof. January 29, 1885, the Supreme Court reversed the order of the Appellate Court affirming the decree, and the result was largely favorable to Sanders. Before hearing of the decision of the Supreme Court, Sanders asked Seelye if he had his 195 bonds in a secure place, and learning that he had not received them, on February 5th, sent Seelye an order for the bonds, directing him to put them in a safe place and hold them subject to his order. Seelye took the bonds and put them in the vault of Quick & Miller, where they now remain. A dispute having arisen between Seelye, Quick & Miller and Sanders, about the amount of compensation the attorneys were entitled to, Sanders demanded his bonds, but the appellees insisted upon retaining them under

an attorney's lien until their fees in this litigation as well as their general balance of account against Sanders is paid. A rule to show cause why the bonds should not be surrendered to Sanders, was issued on his motion by the Circuit Court, but on the hearing of the matter, that court decreed that Sanders was indebted to Seelye in the sum of $1,158.25, and to Quick & Miller in the sum of $4,950, and that they respectively have retaining liens on the bonds for the payment of their claims. Sanders excepted to the decree and appealed.

Mr. D. T. CORBIN, for appellant.

Messrs. D. J. SCHUYLER and HENRY E. SEELYE, for appellees.

GARNETT, J. The chief point in dispute in this case is whether the letters referred to in the statement of the case, and the action of the parties, constitute a contract for all the services rendered by appellees for appellant until the decision of the Supreme Court, for the sum of $500 if successful, and $300 if not successful, or was for services in the Appellate Court only. The Circuit Court held the latter was the true interpretation. Sanders, in his letter of September 25, 1882, taken alone, seems to be emphatic in his determination not to pay more than $500 for a reversal of the decree in the Supreme Court. It must be admitted, however, that he did not always mean the Supreme Court when he used those words. In his letter of September 16, 1882, he acknowledged receipt of Seelye's letter of the 14th, referring, as he (Sanders) says, to securing counsel to attend to his interests in the Supreme Court, although Seelye's letter of the 14th distinctly named the Appellate Court and made no reference to the Supreme Court. Thus there was a foundation laid for the supposition that when he said "Supreme Court" in his letter of September 25th he meant the Appellate Court. That Seelye acted on that supposition, in good faith, is shown by the fact that immediately after its receipt he called on Herbert, Quick & Miller, and proposed to have them represent Sanders in the Appellate

Sanders v. Seelye.

Court.   On the same day (September 28th) they wrote Seelye that they had considered his proposal in behalf of Mr. Sanders that they should represent his interests in the *Appellate* Court, and declined the same.   That letter was sent by Seelye to Sanders, and in his letter inclosed therewith, Seelye said: "I submitted *your proposition* to Messrs. Herbert, Quick & Miller, and have just received the inclosed." There was distinct and definite information given to Sanders that Seelye understood him to mean the *Appellate* Court, in his letter of September 25th.   If Sanders did not mean that he should have so stated by correcting Seelye.   When he afterward learned that Herbert was at work on his case in the Appellate Court, he must have known that he had reconsidered the matter and determined to accept the proposal which his letter showed he understood to have been made by Sanders.   If Sanders did not wish his services as he was informed Herbert understood he was rendering them, he should have spoken. Having remained silent, it is now too late to speak.   This view of the question is confirmed by the correspondence between Seelye and Sanders in June, 1883, after the decree was affirmed by this court.   Up to that time Sanders, in his letters to Seelye, had insisted on the binding force of his letter of September 25th.   When additional expense, not within the terms of that letter, was proposed to him, for the purpose of an appeal to the Supreme Court, he no longer refers to that letter as the measure of his undertaking, but inquires about the amount that will be required, and says he is willing to sustain his fair proportion.   It may be fairly said that this was a tacit admission that the contract between the parties had reached its termination.

We are not satisfied from the record that anything was allowed to Seelye for his services in the Appellate Court.   The decree allowed $1,200 *on account* of items six and ten in the bill presented by him.   Item six was a charge of $1,750 for services in the matter of agreement with W. L. Peck et al., and item ten was a charge of $1,000 for services and disbursements in Appellate, Supreme and Circuit Courts.   The decree of the Circuit Court made a large reduction from the amounts allowed by the master on those two items; the evidence being

sufficient to sustain the amount allowed by the court, and there being nothing to show that any part of the amount was allowed for services in the Appellate Court, we can not say the decree is erroneous on account of this allowance. The bonds came into the hands of the attorneys in the course of their professional employment, and they are therefore entitled to a lien on them for the general balance of their accounts. Weeks on Attorneys at Law, Sec. 371; 1 Jones on Liens, Secs. 115, 119.

A number of other questions have been forcibly argued by counsel for appellant and by counsel for appellees on their cross-errors, but as a separate and formal presentation of them in this opinion would not be serviceable either to the parties or the profession, we must content ourselves by saying that they have all had careful consideration, and we find the decree of the court below is not unwarranted in any point. It is therefore affirmed.

*Decree affirmed.*