## Louis Bour, Defendant in Error, v. Benjamin M. Thomas, Plaintiff in Error.

## Gen. No. 16,571.

1. VERDICTS—*when not disturbed as against the evidence.* A verdict will not be set aside as against the evidence unless clearly and manifestly so.

2. ATTORNEY AND CLIENT—*upon what lien for fees does not attach.* "An attorney has no lien on property placed in his hands for a special purpose under such circumstances that a trust arises which is inconsistent with, or adverse to, the claim of a lien."

Error to the Municipal Court of Chicago; the HON. JOHN W. HOUSTON, Judge, presiding. Heard in the Branch Appellate Court at the October term, 1910. Affirmed. Opinion filed May 23, 1912.

JAMES B. HEFFERMAN, for plaintiff in error.

FRANK P. SADLER, for defendant in error.

MR. PRESIDING JUSTICE GRIDLEY delivered the opinion of the court.

This writ of error was sued out to reverse a judgment of the Municipal Court of Chicago for $1000 in favor of Louis Bour, defendant in error, against Benjamin M. Thomas, an attorney at law, plaintiff in error. Bour brought suit against Thomas claiming that the latter had wrongfully converted to his own use $1000 in United States currency, which after demand made he had refused to turn over to Bour. The case

was tried by a jury and they found by their verdict that Thomas was guilty of having wilfully converted said property to his own use, and assessed Bour's damages at the sum of $1000, upon which verdict the court entered judgment.

The facts are, substantially, that on April 30, 1909, Bour was indicted for having obtained money by means of a confidence game, was arrested and taken to the sheriff's office in the Criminal Court building in Chicago; that after learning that his bond had been fixed at $1000 he there telephoned his wife to draw out $1000 from a bank and send it down by his son, Gustav Bour, for the purpose of depositing it as cash bail; that subsequently he was introduced to Thomas by a deputy sheriff, with the result that Bour employed Thomas to act as his attorney in the defense of the case in which he had just been indicted; that Bour was then taken to the county jail; that about one hour later Thomas came to the jail with the son, the son handed Bour $1000 in currency, and Bour told Thomas to go and see the proper official and tell him that he (Bour) had the money ready to deposit in lieu of a bail bond; that thereupon, according to Bour's testimony, Thomas said to Bour, "Don't you put up that money as cash bond because you will never get a cent of it back;    *    *    *    I have a whole lot of property, me and my wife. I send for my wife, you have your bonds signed, we bail you out of here, you let me have the thousand dollars to secure the bond, then you are sure you will get it back," and thereupon Bour said to Thomas, "You give me a receipt and state that I gave you the money as a bond," and thereupon Thomas "pulled two sheets of paper out of his pocket and drew up a receipt in his own handwriting, and signed it in my presence;" that, according to Thomas' testimony as to this conversation, it was Bour, and not Thomas, who was afraid of depositing the money in lieu of a bail bond, and that it was Bour's urgent re-

quest that Thomas' wife sign the bail bond and the money be put in Thomas' hands as security for said bond; that thereupon Bour gave Thomas the $1000 in currency and Thomas gave Bour said receipt and that later in the day Thomas' wife signed Bour's bail bond and he was released from custody. The said receipt is as follows:

"CHICAGO, April 30th, 1909.

Received of Louis Bour One Thousand Dollars, the same to be used as a cash bond, or if B. M. Thomas desires to sign bond with wife for one thousand dollars for said Louis Bour in a certain confidence game case now pending against the said Louis Bour in Criminal Court of Cook County then the said Louis Bour says that the said B. M. Thomas is to retain the said one thousand dollars in cash to secure him and his wife for so signing his, the said Louis Bour's bond, *said one thousand Dollars to be returned to Louis Bour* when the case is disposed of and bond released, and it is understood that B. M. Thomas is to act as attorney for said Louis Bour throughout the trial of his case.

B. M. THOMAS, ATTY."

It further appears from the evidence that a few days later a second indictment was returned against Bour, that Bour procured a surety company to sign his bail bond in said second case and that Thomas, acting as his attorney, accompanied Bour and the representative of said surety company to court, where Bour was released on bail in said second case; that shortly thereafter Bour was sued in the Municipal Court by the same party who had been the complaining witness against him before the grand jury, and Thomas was employed to represent him in the defense of that suit; that Bour became dissatisfied with the actions of Thomas in that case; that subsequently, in the month of July, the case in which Bour was first indicted, and in which Thomas' wife had signed Bour's bond, was called for trial, was continued until October

on motion of Thomas, and Bour became further dissatisfied with the actions of Thomas as his attorney; that in September Bour decided that he no longer wanted Thomas to act for him, and he thereupon, in company with his brother, Nicholas Bour, called on Thomas and told him that he was going to release the bond which had been signed by Thomas' wife and have a surety company sign a new bond for him, and that he wanted the $1000 back, and requested Thomas to make out his bill for services rendered, saying that he was ready to pay for the same; that Thomas did not then render him a bill but delayed doing so from time to time and at no time rendered one; that Bour finally, after notice to Thomas, went into court, had the bond of Thomas' wife cancelled and gave a new bail bond with a surety company as surety thereon; that Bour then employed another attorney to represent him, who, at his request, on October 18, 1909, wrote Thomas advising him of the cancellation of the wife's bond, of his dismissal as attorney for Bour, and requesting a bill for services theretofore performed by Thomas, but no bill was sent; that subsequently, on November 19, 1909, said other attorney, at Bour's request, again wrote Thomas, demanding that Thomas turn over to Bour said $1000 at once, and saying that his failure so to do would be construed to mean that Thomas had converted it to his own use; that Thomas acknowledged receipt of this demand but did not turn over the money to Bour, and that subsequently this suit was instituted.

Thomas was a witness in his own behalf on the trial in the court below. He admitted that, at the time the money came into his possession and when he signed and delivered to Bour said receipt, the $1000 was not given to him for the purpose of paying or securing his fees, but solely as bail bond money. His contentions are, as disclosed from his testimony and from the brief of his counsel, (1), that there was a subsequent

verbal agreement entered into between him and Bour, by which it was understood that he could take his fees out of said money, and (2) that even in the absence of such a subsequent agreement he has an attorney's retaining lien on the money for his fees.

On the question as to whether or not there was such a subsequent verbal agreement, the evidence is conflicting. Thomas testified that, on the day Bour was released from custody and after his wife had signed the bail bond, Bour and he had a conversation in Thomas' office, at which Bour told him that he could take his fees out of said $1000. Bour denied that any such conversation as to fees took place, and in this he is corroborated by the testimony of his son, Gustav, who was present. Thomas further testified that some time during the month of June, while Bour and he were returning together from the Municipal Court, they had another conversation as to fees, in which he told Bour that he was going to keep the $1000 which was in his hands as his retainer, and that Bour replied, "I do not care what it costs, * * * I do not want to go to the penitentiary." Bour denied that any such conversation took place in June, or at any time, and further stated that he never at any time agreed with Thomas that Thomas might take any part of his attorney's fees out of the $1000. Whether there was such a subsequent agreement between Bour and Thomas was a question of fact for the jury to determine from all the evidence, and by their verdict they seemingly found in favor of Bour on this issue, and their verdict is not manifestly against the weight of the evidence.

In support of the contention that Thomas has an attorney's retaining lien on said $1000 for his fees, counsel for Thomas cites the cases of Sanders v. Seelye, 128 Ill. 631, affirming Sanders v. Seelye, 27 Ill. App. 288. We have examined the facts of this case, as disclosed from the opinions of both the Appellate and

Supreme Courts, and are of the opinion that the case is not in point. In the Seelye case the bonds, on which an attorney's retaining lien was claimed, came into the attorneys' hands in the course of their professional employment, to be held by them not as mere custodians. In the case before us, the $1000 which came into Thomas' hands, was to be used for a special purpose, viz: as a cash bond or as security to Thomas and his wife, or Thomas' wife, for executing a bail bond as surety for Bour, and, furthermore, the evident intention of the parties was that the money was to be returned to Bour upon the bond being released. As to the $1000, Thomas' relation to Bour was that of a trustee, or bailee for a special purpose. Under such circumstances, we are of the opinion that Thomas cannot have an attorney's retaining lien on the money. This view is fully sustained, we think, by the authorities.

"An attorney has no lien on property placed in his hands for a special purpose under such circumstances that a trust arises which is inconsistent with, or adverse to, the claim of a lien." (4 Cyc. 1016).

In State v. Lucas, 24 Oregon 168, Lucas was indicted, tried and found guilty on the charge of embezzling and converting to his own use the sum of $300, the property of Ninta Parker. It appeared that he was acting as the attorney at law for Frank Lynch, who, together with Ninta Parker, had been charged with the crime of adultery. Lynch alone was arrested, and at the preliminary examination his bail was fixed at $2000, in default of which he was committed to jail. Subsequently, through the efforts of Lucas, the bail was reduced to $300, but Lynch was still unable to secure a bail bond. Lucas then called upon Ninta Parker and suggested that she furnish the money to deposit in lieu of a bail bond. She thereupon borrowed $300 of M. L. Winser, which money was deliv-

ered to Lucas either by Miss Parker or Winser, both
being present at the time, for the purpose indicated,
and Lucas gave Winser a written receipt for the $300,
"for bail, and for securing the discharge or release
of Frank J. Lynch, * * * said bail money to be
returned to said M. L. Winser upon final disposition
of such charge." Lucas, after securing the money,
represented to the committing magistrate that he could
not raise more than $150 as bail for Lynch, and the
bail was reduced to that amount, which was deposited
by Lucas and Lynch was released. Subsequently Lu-
cas filed with said magistrate a bail bond, and received
from him the money so deposited. Thereafter Miss
Parker repaid to Winser the $300 she had borrowed
from Winser, and received from him an order direct-
ing Lucas to deliver to her the money placed in Lu-
cas' hands to be used as a deposit in lieu of bail for
Lynch. Lucas refused to pay Miss Parker the money,
and on trial of the criminal charge against him set up
as a defense thereto that he had a lien on the money
for fees due him from Miss Parker for services ren-
dered in the action against her and Lynch, in which
they were charged with adultery. The court, after
stating that as a general rule an attorney has a retain-
ing lien on papers, documents, etc. of his client, says
(p. 173) :—

"But no such lien can attach where the papers or
money are delivered to the attorney for a *special pur-
pose,* as if the deeds are delivered in order that he may
exhibit them to another, (Balch v. Symes, 1 Turn. & R.
87,) or to enable him to draw a mortgage, (Lawson v.
Dickerson, 8 Mod. 306,) or when the money is delivered
to him to apply in settlement of a suit (Anderson v.
Bosworth (R. I.), 8 Atl. 339; 1 Jones, Liens, 138). It
has, however, been held that if the attorney is permitted
to retain the property after the object for which it was
given has failed, there is a general lien; (*Ex parte
Pemberton,* 18 Ves. 282; *Ex parte Sterling,* 16 Ves.

258); but this is on the theory that permitting the papers or money to remain in the hands of an attorney after the object for which he received them has been accomplished or failed is equivalent to a general deposit, and can therefore have no application to a case where money or other property of a client is put into the hands of his attorney for a specific purpose, to be disposed of in a particular manner after such purpose shall have been accomplished. In such case no general lien can attach, because the terms of the bailment are inconsistent with the right to a lien. In such case the attorney becomes a bailee of the property for a special purpose, with the same rights, and subject to the same duties and liabilities, as any other bailee. If, therefore, in this case the money of Miss Parker was delivered to the defendant for the specific purpose of being used as cash bail to secure the discharge of Lynch, with an agreement on his part, that when the money should have accomplished the purpose for which it was delivered to him, it should be returned to Winser, the terms of the bailment are inconsistent with, and antagonistic to, his right to hold a lien upon the money for his compensation as attorney for either Miss Parker or Lynch, and no such lien can attach in the absence of a special agreement to that effect."

It will be noticed that the facts in the Lucas case are quite similar to the facts of the case now before us. Thomas, in the present case, received the money for a special purpose, as did Lucas in the case cited. Thomas, likewise, as did Lucas, agreed to return the money when the bond was released but refused to do so, claiming a lien thereon for fees.

Further discussion of the reported cases, where the same or a similar question has arisen, seems unnecessary. We may, however, with propriety refer to the following additional cases: Henry v. Fowler, 3 Daly (N. Y.) 199; Bracher v. Olds, 60 N. J. Eq. 449; West v. Bacon, 164 N. Y. 425.

For the reasons indicated the judgment of the Municipal Court is affirmed.          *Affirmed.*